IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN V. MATTIUZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-181J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM JUDGMENT ORDER

AND NOW, this __27th__ day of September, 2007, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, denied. The Commissioner's decision of April 10, 2006, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his applications for disability insurance benefits and supplemental security income on September 23, 2004, alleging a disability onset date of February 26, 2004, due to, inter alia, back pain and depression. Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on March 3, 2005, at which plaintiff, represented by counsel, appeared and testified. On April 10,

2006, the ALJ issued a decision finding that plaintiff is not disabled. On July 7, 2006, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and acquired sufficient quarters of coverage to remain insured only through December 31, 2005. Accordingly, to be entitled to Title II benefits, plaintiff bears the burden of proving that he became disabled prior to the expiration of his disability insured status on December 31, 2005.

Plaintiff was 45 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff completed the eleventh grade but never graduated from high school, which is classified as a limited education. 20 C.F.R. §§404.1563 and 416.963. He has past relevant work experience as a taxi driver, winder operator, laborer, mold machine operator and assembler/molder, but has not engaged in any substantial gainful activity since his alleged onset date of February 26, 2004.

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of major depressive disorder, dysthymic disorder, bipolar disorder, adult onset

attention deficit hyperactivity disorder, generalized anxiety disorder, pain disorder, personality disorder and a history of poly substance abuse, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ further found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of his physical and mental impairments. A vocational expert then identified numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including packer and janitor/cleaner. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and

1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[1]  See 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's finding of not disabled at step 5 of the sequential evaluation process for two reasons: (1) the ALJ improperly analyzed the medical evidence and failed to accord controlling weight to the opinion of plaintiff's treating psychologist; and, (2) the ALJ's residual functional capacity finding that plaintiff can perform sustained work on a regular and continuing basis is not supported by substantial evidence. After reviewing the ALJ's decision and the record, this court must conclude that the ALJ's finding of not disabled is not supported by substantial evidence.

---

[1] The ALJ must determine in sequence:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§404.1545(a) and 416.945(a). In doing so, the ALJ must consider all relevant evidence, including medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others and observations of the claimant's limitations by others. Fargnoli, 247 F.3d at 41; see also SSR 96-8p.

Here, the ALJ found that plaintiff has the residual functional capacity:

> to perform simple, repetitive, routine (i.e. unskilled) work at the light exertional level not performed in a fast paced production environment involving no more than occasional postural maneuvers . . . no more than simple, work-related decisions, and in general, relatively few work place changes, and no more than occasional interaction with supervisors, co-workers or the public.

(R. 21).

Although plaintiff does not challenge on appeal the ALJ's residual functional capacity as it relates to his physical impairments, he does challenge the ALJ's finding as to the limitations resulting from plaintiff's mental impairments. Specifically, plaintiff asserts that the ALJ's residual functional capacity assessment is inconsistent with the opinion of plaintiff's treating psychologist, Dr. Cassone, who suggests that plaintiff's mental impairments would preclude gainful employment. Upon review of the record, this court finds that the ALJ's evaluation of the medical evidence is not supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) & 416.1527(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.1527(d).

In this case, medical evidence as it relates to plaintiff's mental impairments came from three sources: (1) Dr. Frank Schmidt, a psychologist who conducted a one-time consultative evaluation of plaintiff on February 1, 2005; (2) Dr. Heil Richard, a state agency reviewing psychologist who reviewed the record, including Dr. Schmidt's report, and issued a mental residual functional capacity assessment dated February 15, 2005; and, (3) the treatment records, reports and assessments of Dr. Richard Cassone, plaintiff's treating psychologist who treated plaintiff from February of 2005 until at least February of 2006.

Dr. Cassone was the only medical source to treat plaintiff on a regular basis. Indeed, Dr. Schmidt saw plaintiff only once for a consultative examination and Dr. Richard never saw plaintiff at all, but merely reviewed Dr. Schmidt's report. Accordingly, Dr. Cassone is the only psychologist with a longitudinal view of plaintiff's mental impairments and the limitations resulting therefrom.

Nevertheless, the ALJ, in evaluating the medical evidence, determined that Dr. Cassone's opinion was not entitled to controlling weight. In fact, the ALJ gave less weight to Dr. Cassone's opinion than to those of either Dr. Schmidt or Dr. Richard. In doing so, the ALJ determined that Dr. Cassone's opinion was inconsistent with his own mental status evaluation and plaintiff's self-reported activities of daily living.

The court does not believe that the ALJ's evaluation of the evidence is supported by substantial evidence. In many respects,

Dr. Cassone's assessment of plaintiff's limitations is in line with that of Dr. Schmidt. To the extent those assessments were consistent, for example, as to GAF scores, the ALJ rejected both of their opinions, based on the report of Dr. Richard, who summarily stated that the GAF score from Dr. Schmidt "is not supported by the preponderance of the [medical evidence of record]." (R. 147). To the extent Dr. Cassone's assessments were inconsistent with Dr. Schmidt's, however, the ALJ accepted Dr. Schmidt's as being consistent with those of Dr. Richard.

In effect, the ALJ gave controlling weight to the opinion of the reviewing physician. However, the ALJ never refers to the fact that Dr. Richard reviewed the record prior to any treatment of plaintiff by Dr. Cassone. Dr. Richard's assessment is dated February 15, 2005. The medical evidence of record at that time consisted solely of the consultative evaluation of Dr. Schmidt, who evaluated plaintiff in early February of 2005. Accordingly, even if Dr. Richard had been correct in his report that the medical evidence at that time did not support Dr. Schmidt's GAF score, clearly Dr. Cassone's subsequent assessments were wholly consistent with Dr. Schmidt's earlier found GAF score.

Moreover, it is clear to the court upon a review of the record that the ALJ simply ignored a number of salient factors recorded by Dr. Cassone. For example, although the ALJ noted that plaintiff was never hospitalized in an in-patient facility for his mental impairments and stopped attending a partial hospitalization program because "he wasn't getting anything out of it", the ALJ

failed to consider Dr. Cassone's report explaining why plaintiff stopped attending that program. In his February 15, 2006, letter summarizing his year-long treatment of plaintiff, Dr. Cassone expressly noted that it was *his* belief that plaintiff, who had attended 54 sessions of the partial hospitalization program, could not benefit further from that program. As an alternative, Dr. Cassone then started plaintiff on a program of individual therapy in an attempt to identify any contributing factors to plaintiff's "ongoing debilitating depressive symptomatology." (R. 176). The ALJ never mentioned plaintiff's individualized therapy in his decision.

Likewise, the ALJ completely ignored the fact that plaintiff was actively involved with the Resource Coordination Unit at Cambria County Mental Health, which, as explained by Dr. Cassone, "is a specialized case management that serves individuals who suffer from serious mental illness." (R. 176). This fact is critical because it discredits the ALJ's finding that Dr. Cassone's opinion was not entitled to controlling weight because it was inconsistent with plaintiff's self-reported activities of daily living. Dr. Cassone noted in his report that when plaintiff began receiving services with the Resource Coordination Unit, his depression had become so debilitating that at times he was unable to "identify, secure and maintain basic daily necessities" and that plaintiff continued to require the "ongoing direction, monitoring, and assistance" of the Resource Coordination Unit to accomplish tasks such as securing fuel to heat his home and public

assistance benefits. (R. 176). Again, the ALJ never mentioned plaintiff's reliance on the Resource Coordination Unit to assist him in meeting his basic daily needs.

Neither Dr. Schmidt nor Dr. Richard had the foregoing information available to them at the time they completed their assessments. Had this pertinent information been available to them, it is quite likely that their assessments would have changed as well. Nevertheless, the ALJ chose to accept assessments that were not based on all of the evidence of record and to discount that of the psychologist who treated plaintiff on a consistent basis for over a year. Under these circumstances, this court cannot find that the ALJ's evaluation of the medical evidence as it relates to plaintiff's mental impairments is supported by substantial evidence.

The court believes that Dr. Cassone's opinion as to the limitations resulting from plaintiff's mental impairments is entitled to controlling weight under the applicable regulations. Dr. Cassone's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and was based on his treatment of plaintiff over a lengthy period. Contrary to defendant's contention, Dr. Cassone's opinion is supported by his own mental health evaluations (R. 154-158; 171-174).

Moreover, his assessment also is supported by the results of the consultative examination performed by Dr. Schmidt, who found that plaintiff exhibited 95% of the symptoms on a depression/mania screening test and 50% of the symptoms on a manic behavior

screening test.  In addition, the GAF score of 40 recorded by Dr. Cassone in April of 2005 was consistent with that of 39 recorded by Dr. Schmidt in February of 2005.

Likewise, Dr. Cassone's assessment is not inconsistent with other <u>substantial</u> evidence in the record.  To the extent that it is inconsistent with Dr. Richard's report or Dr. Schmidt's conclusions, it must be emphasized that Dr. Schmidt evaluated plaintiff, and Dr. Richard reviewed Dr. Schmidt's report, <u>prior</u> to any treatment of plaintiff by Dr. Cassone.

Based on the foregoing, the court also agrees that the ALJ's residual functional capacity finding that plaintiff can perform sustained work on a regular and continuing basis is not supported by substantial evidence.  Residual functional capacity assesses "an individual's ability to do sustained work-related physical and mental abilities on a regular and continuing basis."  SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  <u>Id</u>.

Here, the limitations set forth by Dr. Cassone clearly preclude plaintiff from performing work on a regular and continuing basis.  Dr. Cassone has indicated that plaintiff requires the assistance of individuals from the Resource Coordination Unit in meeting his basic daily needs and also to ensure his attendance at appointments.  (R. 173; 176).  Dr. Schmidt also estimated plaintiff's impairment in activities of daily living to be 70% and in social functioning to be 60%. (R. 130).

When the record has been developed fully, and when substantial evidence in the record as a whole indicates that a claimant is disabled and entitled to benefits, it is unreasonable to remand because of the resulting delay in receipt of benefits, and the decision of the Commissioner will be reversed. Podedworny v. Harris, 745 F.2d 210, 221-222 (3d Cir. 1984). Here, the record has been developed fully and substantial medical evidence exists supporting a finding that plaintiff is disabled by his mental impairments. Therefore, a remand for additional evaluation of the evidence would be inappropriate in this case.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner solely for a determination as to the amount of benefits to which plaintiff is entitled.[2]

        s/Gustave Diamond
        Gustave Diamond
        United States District Judge

---

[2] Defendant alleges in its brief that plaintiff is not entitled to any benefits under Title II because he failed to establish that he became disabled prior to the expiration of his eligibility on December 31, 2005. However, Dr. Cassone's treatment records indicate that he treated plaintiff from February of 2005 onward and clearly would support a finding that defendant became disabled prior to the expiration of his insured status.

cc: Stanley E. Hilton, Esq.
801 Jonnet Building
Monroeville, PA 15146

John J. Valkovci
Assistant U.S. Attorney
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901